UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANTHONY JEROME BAZEMORE,

                Petitioner,

v.                                    Civil No. 2:23cv534
                                  Criminal No. 2:22cr21

UNITED STATES OF AMERICA,

                Respondent.

## OPINION AND ORDER

This matter is before the Court on Anthony Jerome Bazemore's ("Petitioner") pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 44. Because all of Petitioner's claims fail on the merits, Petitioner's motion is DENIED.[1]

## I. BACKGROUND

On March 23, 2022, a grand jury returned a four-count indictment charging Petitioner with three drug trafficking felonies and a § 922(g) firearm possession felony. ECF No. 19. On May 27, 2022, Petitioner pled guilty to one drug trafficking count as well as the § 922(g) firearm count. See ECF No. 29, at 1; ECF No. 31. In Petitioner's written plea agreement, he "knowingly waive[d] the right to appeal the conviction and any

---

[1] After reviewing the record, the Court determined that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to any relief. See R. Gov. § 2255 Proc. for U.S. Dist. Cts. 8(a).

sentence within the statutory maximum" except for certain ineffective assistance of counsel claims.  ECF No. 29, at 4.

In preparation for sentencing, a presentence investigation report ("PSR") was prepared that applied several Guideline enhancements.  Based on Petitioner's conduct, the probation officer determined that Petitioner had an Offense Level of 32. ECF No. 35, at 8.  This consisted of a base offense level of 22;[2] a 4-level multiple-firearm enhancement (8-24 firearms); a 2-level stolen-firearm enhancement; and a 4-level use/possession of a firearm or ammunition in connection with another felony enhancement.  See ECF No. 35, at 8.

On September 22, 2022, Petitioner raised only one objection to the PSR – that he should receive a 3-level credit for acceptance of responsibility.  See ECF No. 35, at 22.  On September 29, 2022, Petitioner filed a position paper advocating for that 3-level credit and seeking a downward variance based (in part) on the "arbitrary nature of the guidelines relative to the number of guns and levels."  See ECF No. 37, at 6.  Petitioner argued that if he had been attributed with seven firearms, rather than eight, he would receive only a 2-level enhancement rather than a 4-level enhancement.  See id.; see also U.S.S.G. § 2K2.1(b)(1).  To account for this "arbitrary" line-drawing, Petitioner asked the Court to

---

[2] Petitioner had an enhanced base offense level of 22 because one of the firearms involved in his offense was a "semiautomatic firearm . . . capable of accepting a large capacity magazine."  U.S.S.G. 2K2.1(a)(3); see also ECF No. 43, at 7.

treat his multiple-firearm enhancement as a 2-level enhancement. ECF No. 37, at 6.

At Petitioner's sentencing hearing on October 6, 2022, the Court heard argument and sustained Petitioner's objection regarding acceptance of responsibility. See ECF No. 41. With the 3-level credit for acceptance of responsibility, Petitioner had an Offense Level of 29 and a Criminal History Category III, which yielded an advisory Guideline range of 108 to 135 months. ECF No. 43, at 8. In consideration of Petitioner's non-frivolous arguments for a variance, including his argument regarding the multiple-firearm enhancement, the Court imposed a below-Guidelines sentence of 100 months' imprisonment, followed by a 3-year term of supervised release. See ECF No. 40, at 2-3.

In the instant motion, Petitioner requests that his sentence be vacated because Petitioner's counsel provided ineffective assistance for failing to: (1) file a notice of appeal; (2) properly explain the PSR;[3] (3) object to Petitioner's criminal history score; (4) object to the multiple-firearm enhancement; (5) object to the extended magazine enhancement;[4] and (6) object to date errors in the PSR. ECF No. 44. The Government filed a brief in opposition challenging all of Petitioner's claims on the

---

[3] Though styled as such in his petition, Petitioner's claim instead appears to be that counsel was constitutionally deficient for failing to move for a competency hearing.

[4] Petitioner's claim appears to target the enhanced base offense level he received due to the characteristics of one of the firearms that he possessed.

merits.  ECF No. 51.  In support, the Government provided an affidavit from Petitioner's former counsel.  ECF No. 51-1. Petitioner did not file a reply brief or submit any additional evidence challenging his former counsel's sworn version of events.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally challenge their conviction or sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or [the sentence or conviction] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  A petitioner must prove the asserted grounds for relief by a preponderance of the evidence.  Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).  In this case, Petitioner alleges (under various theories) that he was deprived of his constitutional right to counsel at sentencing.

The Sixth Amendment guarantees that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  Applying the Sixth Amendment, the Supreme Court has held that the right to counsel is the right to "effective assistance of counsel."  Strickland v. Washington, 466 U.S. 668, 685 (1984).  To obtain relief based on an allegation of ineffective assistance, a petitioner must normally establish that:

4

(1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the petitioner.   Id. at 687-88.

First, the Constitution does not guarantee errorless representation; deficient performance instead requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id., at 687.  Reviewing courts strongly presume that counsel exercised reasonable professional judgment.  Id. at 689. So only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'"  Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690).  As it is all too easy to challenge an act, omission, or strategy once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight" by "evaluat[ing] the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Ultimately, the "basic lesson" of Strickland is not just deference but high deference, and attorneys can be "selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014).

Second, to establish prejudice, a petitioner must ordinarily "affirmatively prove" that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In limited circumstances, prejudice is presumed – a petitioner can avoid making a showing of prejudice – if there is a "complete denial of counsel" at, or counsel is "totally absent" from, a "critical stage of the proceedings." United States v. Cronic, 466 U.S. 648, 658-59 & n.25 (1984).

If a petitioner fails to prove either prong of the Strickland test (if applicable), then the Court need not evaluate the other prong. Moore v. Harde, 723 F.3d 488, 500 (4th Cir. 2013). Finally, allegations of ineffective assistance that are supported by mere "vague and conclusory allegations" are insufficient to carry a petitioner's burden under Strickland, and such allegations may "be disposed of without further investigation by the District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (internal quotation marks and citation omitted).

### III. DISCUSSION

Petitioner advances six claims of ineffective assistance of counsel, including that Petitioner's counsel: (1) failed to file a notice of appeal; (2) failed to properly explain the PSR to Petitioner and move for a competency hearing; (3) failed to object to Petitioner's criminal history score in the PSR; (4) failed to

object to the multiple-firearm enhancement; (5) failed to object to the extended-magazine enhanced base offense level; and (6) failed to object to various date errors in the PSR.  See ECF No. 44.  Each claim is addressed in turn.

### A. Failure to Consult Regarding a Notice of Appeal

Petitioner first argues that counsel provided ineffective assistance by failing "to file a notice of appeal."  ECF No. 44-1, at 10.  Though styled as such, Petitioner does not argue that he instructed counsel to file a notice of appeal; instead, he argues that counsel was constitutionally deficient for failing to consult with him about an appeal.[5]  See id. at 10-11; see also United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (explaining that failure to file a requested appeal is per se ineffective assistance of counsel, but a Petitioner "cannot avail himself of this per se rule [when] nothing in the record . . . indicates that he ever requested that his attorney file an appeal").  Counsel has a constitutionally imposed duty to consult regarding an appeal "when there is reason to think either: (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that [they] were

---

[5] This Court advised Petitioner of his appeal rights during the sentencing hearing.  Specifically, the Court told Petitioner that notwithstanding his waiver of his right to appeal, he could still file a notice of appeal himself, or he could contact the Clerk's Office of this Court to file a notice of appeal on his behalf.  See ECF No. 51-2, at 59-60.

interested in appealing." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480 (2000).

A rational defendant may want to appeal if, for example, "there [were] nonfrivolous grounds for appeal." <u>Id.</u> at 480. In making this assessment, the Court also considers whether "the defendant's conviction followed a trial or guilty plea; whether the defendant received the sentence bargained for[;] . . . and whether the plea agreement expressly reserved or waived some or all appeal rights. <u>United States v. Cooper</u>, 617 F.3d 307, 313 (4th Cir. 2010). In assessing the applicability of either scenario, the Court must "take into account all the information counsel knew or should have known." <u>Roe</u>, 528 U.S. at 480.

Measured against this framework, Petitioner fails to show that a rational defendant in his position would want to appeal. Petitioner pled guilty pursuant to a plea agreement, and that plea agreement expressly waived his right to raise almost any claim on appeal. <u>See</u> ECF No. 29. Furthermore, Petitioner has not identified any non-frivolous claims that he could have and would have raised on direct appeal. While there were no stipulations in Petitioner's plea agreement regarding sentencing, the record does not support an inference that Petitioner's sentencing expectations were unmet. As calculated by the probation officer, Petitioner was facing a recommended sentence of 151–188 months' imprisonment. <u>See</u> ECF No. 35, at 19. After counsel successfully secured a

3-level credit for acceptance of responsibility and separately secured a downward variance, the Court imposed a sentence of only 100 months' imprisonment.[6]   And after the Court imposed its sentence, Petitioner stated:

> This is it for me, right here. I can go the rest of my life, you know. It's a good amount of time, but when you, when you – you got to be punished, so I can't, I can't look at you all and say nothing bad, you know. We gonna all be all right, you know? I got faith. We're gonna be blessed.

ECF No. 51-2, at 61. Based on Petitioner's statement as well as the facts that his sole objection was sustained; he received a below-Guidelines sentence; and he pled guilty pursuant to a plea agreement and waived most of his appeal rights; a reasonable attorney would not have believed that a rational defendant would have wanted to appeal.[7]

Nor was there any reason for counsel to believe that Petitioner was specifically interested in appealing. Petitioner argues that his counsel should have known he wanted to appeal because prior to his sentencing, counsel "promised Petitioner that if any sentence was delivered which Petitioner was not completely satisfied with, a Notice of Appeal would be filed immediately."

---

[6] Although the Government agreed that a sentence far below 151 months was appropriate, defense counsel still secured a variance sentence lower than the sentence requested by the Government. See ECF No. 38, at 1.

[7] This conclusion is further bolstered by this Court's statements during sentencing that Petitioner could file a notice of appeal notwithstanding his waiver of his right to appeal and that the Clerk's Office would file a notice of appeal for him if requested. ECF No. 51-2, at 59–60.

ECF No. 44-1, at 10.   However, there is nothing in the record to support an inference that Petitioner reasonably demonstrated to his counsel that he was interested in appealing his sentence.   To the contrary, Petitioner's statement at the end of the sentencing hearing would appear to suggest the opposite.   See ECF No. 51-2, at 61.   Counsel reports a similar impression, stating that his client "seemed genuinely pleased with the sentence at the time of sentencing."   ECF No. 51-1, at 3.

Petitioner also claims that counsel "stopped responding to Petitioner Bazemore and Petitioner's family immediately" after sentencing.   ECF No. 44-1, at 10.   But Petitioner does not allege that he or his family were trying to contact counsel to inquire about appealing his sentence.   Nor is it clear when the referenced attempts at contact took place.   See id. ("Petitioner's family did finally contact [counsel], well after the 14-day timeline.").   Given these circumstances, Petitioner has failed to show that he reasonably demonstrated to counsel that he was interested in appealing his sentence.   Accordingly, Petitioner's ineffective assistance claim for failing to consult regarding an appeal is **DENIED.**

### B. Failure to Properly Explain the PSR

Petitioner next claims that counsel failed "to properly explain" the PSR, and that counsel should have sought a competency

hearing.[8]   ECF No. 44, at 6; ECF No. 44-1, at 12.   In support, Petitioner states that he "suffers from a registered cognitive learning disability that impacts his long-term memory."   ECF No. 44-1, at 12.   As a result, Petitioner claims that he "was having issues following" the disposition, and this should have prompted his counsel to seek a competency hearing.   Id.

To the extent Petitioner claims that his counsel failed to adequately explain his PSR, such contention is unsupported by any argument and flatly contradicted by the record.   During his sentencing, Petitioner affirmed under oath that he had reviewed the PSR and had adequate time to review it with his counsel.   See ECF No. 51-2, at 5.   Petitioner's bare allegation that his counsel failed to adequately explain his PSR is insufficient to refute his sworn statement to the contrary.   See United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (indicating that, absent "extraordinary circumstances," allegations in a § 2255 motion that directly contradict the petitioner's prior sworn statements are considered "patently frivolous or false"); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

Petitioner's second claim regarding a competency hearing is similarly unsupported by the record.   Counsel may perform

---

[8] Petitioner offers no argument in support of his contention that counsel failed "to properly explain" the PSR.   Nevertheless, the Court endeavors to address his claim as presented.

deficiently when "the facts known and available, or with minimal diligence accessible . . . raise a reasonable doubt as to a defendant's mental condition" and counsel fails "to make further inquiry" into the defendant's competency. Wood v. Zahradnick, 430 F. Supp. 107, 111 (E.D. Va. 1977). "[W]here such reasonable doubt arises, a lawyer 'is not entitled to rely on his own belief about a defendant's mental condition,' but instead must made a reasonable investigation." Mann v. United States, 66 F. Supp. 3d 728, 736 (E.D. Va. 2014) (quoting Becton v. Barnett, 920 F.2d 1190, 1192 (4th Cir. 1990)).

In this case, Petitioner has failed to adequately allege that the facts known to defense counsel would raise a reasonable doubt as to Petitioner's mental condition during the sentencing hearing.[9] Petitioner asserts that his "registered cognitive learning disability" and "intelligence quotient" of 73 support a conclusion that counsel should have sought a competency hearing. ECF No. 44-1, at 12. To be sure, the Court is aware that the PSR supports Petitioner's reported diagnosis and intelligence quotient finding; these findings appear to be from a 1995 assessment when Petitioner was approximately 13. See ECF No. 43, at 17. However, in the cases in which courts have concluded that facts established a reasonable doubt as to the petitioner's mental condition, thereby

---

[9] Notably, Petitioner does not allege that he lacked competence during his Rule 11 plea hearing on May 27, 2022. See ECF No. 44-1, at 12. He argues only that he "was having issues following the proceedings, as clear in the Sentencing Transcript." Id.

imposing on counsel a duty to make a reasonable investigation, the petitioners have exhibited a greater degree of potential mental impairment than Petitioner. See Wood, 578 F.2d at 982 (finding that counsel had a duty to request a competency hearing when the defendant was accused of a senseless, heinous crime and displayed bizarre behaviors); Becton v. Barnett, 920 F.2d 1190, 1191, 1193 (same); see also Mann, 66 F. Supp. 3d, at 378-79 (refusing to find that counsel was ineffective for failing to request a competency hearing when the petitioner displayed competency throughout the proceedings but previously suffered from drug abuse, polio, and meningitis). Petitioner has alleged no such facts that would have put counsel on notice of a potential lack of competency.

To the contrary, an examination of the record provides further confirmation of Petitioner's competence. At Petitioner's plea hearing several months prior to sentencing, Petitioner affirmed under oath that he had never undergone mental health treatment, had no problems understanding the plea proceedings, and had no health conditions that would affect his ability to understand the proceedings. ECF No. 50, at 6. Later, the Court questioned counsel about Petitioner's competency, and counsel affirmed that Petitioner had "been competent and able to cooperate with [him] in this case." Id. at 33. Importantly, counsel confirmed Petitioner was "coherent and cogent . . . he's very alert and very aware of what is going on today" and affirmed that he knew of no reason of

13

any nature that would prevent Petitioner from pleading guilty at that time.  Id. at 34.

During the sentencing hearing, when asked whether Petitioner believed the PSR fully covered his background, Petitioner expressed that he initially did not understand why some of his prior convictions (which occurred more than 15 years ago) were included in his criminal history category calculation.  ECF No. 51-2, at 6.  However, he then said that his attorney explained his criminal history and the 15-year guideline and that he "understood most of it."  Id.  Thereafter, the Court said, "we need to make sure that all of your questions have been answered even if you don't like the answers" and asked whether there was anything else Petitioner wanted to discuss with his counsel.  Id.  Petitioner confirmed that there was nothing further he wanted to discus with his counsel.  Id.  Later, during allocution, Petitioner went on to explain the source of his various probation violations to argue that he had really "been in trouble once [in] 22 years."  Id. at 38-39.  Though Petitioner disagreed with the relevant Guideline provisions concerning criminal history points, it is evident he understood them.[10]

Based on the foregoing, the record does not support a finding that the facts known by counsel during sentencing raised a

---

[10] These Guideline provisions are discussed in greater detail in subsection C.

reasonable   doubt   as   to   Petitioner's   mental   condition.
Accordingly, Petitioner's claim is **DENIED**.

### C. Failure to Object to Petitioner's Criminal History Score

Petitioner next claims that counsel should have objected to his PSR criminal history score because certain state probation violations did not "result in the complete revocation of his sentence." ECF No. 44-1, at 13.   However, the Sentencing Guidelines plainly do not require "complete revocation" of a sentence to bring a prior conviction within the relevant period for criminal history computation.[11]   Accordingly, there was no error in Petitioner's criminal history computation.[12]

---

[11] The Sentencing Guidelines provide that any sentence longer than a year and a month that was imposed more than fifteen years before the defendant's relevant conduct began is not counted toward their criminal history score unless it "resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e)(1).  "Complete revocation" is not required to trigger application of this rule.

[12] As relevant here, Petitioner appears to argue that counsel should have objected to the inclusion of two prior state court convictions in his criminal history calculation.  First, in 2000, Petitioner was convicted of possession with intent to distribute cocaine and received a six-year sentence with four years and eight months suspended.  ECF No. 43, at 9.  Ten years later, Petitioner received a sentence of "time served" for a probation violation tied to this conviction.  See id. at 9-10.  The PSR denotes November 2014 as the earliest date of Petitioner's relevant conduct associated with the instant offense.  See also U.S.S.G. § 4A1.2(e), Application Note 8 ("[T]he term "commencement of the instant offense" includes any relevant conduct." (emphasis in original)).  Accordingly, Petitioner's 2000 conviction plainly fell within the fifteen-year limit.  See U.S.S.G. § 4A1.2(e)(1).

Second, in 2006, Petitioner was charged with assault and battery of a family member.  Id. at 12.  Though the finding of "facts sufficient to find guilt" was made, this charge was ultimately dismissed in 2008.  Id. at 12.  However, "a diversionary disposition resulting from a finding or admission of guilt . . . in a judicial proceeding is counted as a sentence under § 4A1.1(c)." U.S.S.G. § 4A1.2(f).  Because this diversionary "sentence" "was imposed within ten years of the defendant's commencement of the instant offense[,]"

Also troubling for Petitioner's claim is his trial counsel's sworn statement (which remains uncontested by Petitioner) that counsel "determined after research, fact finding, and calls to the probation officer and government, that the score was correct." ECF No. 51-1, at 3; see also Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Based on the foregoing, as well as the clear lack of merit to Petitioner's proffered objection, Petitioner has not established that his counsel provided constitutionally deficient assistance.[13] Petitioner's claim is **DENIED**.

**D. Failure to Object to the Multiple-Firearm Enhancement**

Petitioner next argues that his counsel failed to put the prosecution's case to "the crucible of meaningful adversarial testing" by failing to object to the multiple-firearm enhancement. ECF No. 44-1, at 13 (quoting Cronic, 466 U.S. at 656). In support, Petitioner claims that counsel "essentially praised the Government's methods" for determining eight firearms were properly attributed to Petitioner, ECF No. 44-1, at 13-14, and that this

---

it is properly counted as a 1-point offense in Petitioner's criminal history score. Id.

[13] Even if Petitioner had asked his counsel to raise this objection, the Supreme Court has clearly stated that criminal defendants do not have a constitutional right to "compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). It would follow that criminal defendants do not have a constitutional right to compel appointed counsel to present meritless arguments either.

made his sentencing "lose[] its character as a confrontation between adversaries." Id. at 13 (quoting Cronic, 466 U.S. at 657).

In Cronic, the Supreme Court explained that certain circumstances are so prejudicial that prejudice can be presumed. Cronic, 466 U.S. at 658. As relevant here, prejudice is presumed if a lawyer "fails to subject the prosecution's case to meaningful adversarial testing" such that "the adversary process itself [is] presumptively unreliable." Id. at 659. Proving the absence of adversarial testing is "an extremely high showing for a criminal defendant to make." United States v. Ragin, 820 F.3d 609, 618 (4th Cir. 2016) (quoting Brown v. French, 147 F.3d 307, 313 (4th Cir. 1998)).

Nothing in the record supports Petitioner's contention that his counsel's performance was so deficient that he was presumptively denied the right to counsel under Cronic. Indeed, based on the record before the Court, Petitioner has not satisfied the deficiency standard for Strickland, much less the "extremely high" standard for Cronic.

First, counsel's objection regarding acceptance of responsibility was sustained by the Court, and based on counsel's advocacy, the Court imposed a below-Guidelines sentence. See ECF No. 51-2, at 11-13; 54-55. So one cannot say that counsel wholly abandoned his duty to "require the prosecution's case to survive

17

the crucible of meaningful adversarial testing." <u>Cronic</u>, 466 U.S. at 656.

Second, criminal defendants do not have a constitutional right to force counsel to "press nonfrivolous points . . . if counsel, as a matter of professional judgment, decides not to present those points." <u>Jones</u>, 463 U.S. at 751. Counsel's affidavit reflects his concern that, absent additional evidence supporting their position, Petitioner could lose the 3-level credit for acceptance of responsibility if he objected to the multiple-firearm enhancement. ECF No. 51-1, at 4; <u>see also</u> <u>Strickland</u>, 466 U.S. at 690. Counsel thus decided not to object, but at sentencing, counsel successfully argued in support of a variance based (in part) on the number of guns attributed to Petitioner.[14] <u>See</u> ECF No. 51-2, at 32, 54-55.

The fact that counsel's strategy preserved credit for acceptance of responsibility and bolstered counsel's ability to secure leniency at sentencing (resulting in a below-Guidelines sentence) underscores counsel's constitutional competence advocating for Petitioner. In sum, Petitioner's allegations fail

---

[14] In the course of that advocacy, counsel said "we did not contest the number of guns. I spoke with [the probation officer] about that, and she did her due diligence on all these FaceBook things." ECF No. 51-2 at 32. The "FaceBook things" were conversations Petitioner had on Facebook where he attempted to buy, sell, or trade firearms. <u>See</u> ECF No. 43, at 6. It is not clear to the Court how acknowledging that the probation officer did her due diligence means counsel "failed in his adversarial role as Petitioner's counsel," given the strategy supporting counsel's decision not to object to the number of firearms. <u>See</u> ECF No. 44-1, at 14.

to demonstrate any constitutional error, let alone <u>Cronic</u>-level error.[15]   Accordingly, Petitioner has not carried his burden to establish that his counsel was constitutionally ineffective under <u>Cronic</u>, and his claim is **DENIED**.

### E. Failure to Object to the Extended-Magazine Enhanced Base Offense Level

Petitioner next claims that counsel "failed to maintain the adversarial role under <u>United States v. Cronic</u>" by failing to object to Petitioner's enhanced base offense level triggered by the extended capacity magazine. ECF No. 44-1, at 14-15.   Though counsel did not formally object, he did argue for a downward variance based on the facts underlying the extended magazine enhancement.  Specifically, counsel argued that Petitioner had not asked for an extended magazine and that the government chose to offer a firearm for sale (through a confidential source) that had an extended magazine.  <u>See</u> ECF No. 51-2, at 30-31.   Later, the Court said it "considere[ed] [that] the extended magazine as something that was shown to and set up by the government" in imposing a below-Guidelines sentence.  <u>Id.</u> at 55.

---

[15] Although Petitioner does not argue his claim alternatively under <u>Strickland</u>, Petitioner has similarly failed to carry his burden with respect to the first prong of the <u>Strickland</u> standard.  As stated, Petitioner does not have a constitutional right to force his counsel to make a nonfrivolous objection, and Petitioner has not alleged sufficient facts to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" or that his counsel's actions could not be considered sound strategy.  <u>Strickland</u>, 466 U.S. at 689.

As previously referenced, criminal defendants do not have a constitutional right to compel counsel to raise nonfrivolous claims, see Jones, 463 U.S. at 751, and in this case, any objection to the enhanced offense level would have been meritless. Under the Guidelines, an enhanced offense level is appropriate for unlawful possession of a firearm if "the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine." U.S.S.G. § 2K2.1(a)(3); see also U.S.S.G. § 2K2.1 cmt. 2. Petitioner was not required to specifically request such a firearm to trigger the enhancement; this claim is therefore **DENIED**.[16]

### F. Failure to Object to Date Errors in the PSR

Finally, Petitioner vaguely argues that his counsel was constitutionally ineffective for failing to object to certain alleged date errors in the PSR concerning the confidential source's (the "CS") dealings with Petitioner. ECF No. 44-1, at 15. Petitioner's concern appears to be that the CS told police that they began purchasing cocaine from Petitioner in 2014 (which is reflected in the PSR), but the signed Statement of Facts says that the CS told police they "had been purchasing cocaine from the defendant since the winter of 2017." ECF No. 30, at 1.

---

[16] During sentencing, Petitioner's counsel confirmed his understanding of the law on this point, noting that although the government chose to offer Petitioner a gun with an extended magazine, that was "not grounds for an objection." ECF No. 51-2, at 31.

Notably, Petitioner does not make any clear argument explaining how counsel was constitutionally deficient for failing to raise such an objection. Nor does Petitioner explain how he was prejudiced by any alleged error. Indeed, the pre- and post-2017 drug amounts did not affect Petitioner's Guideline calculation because it was based on the firearm guideline, not the drug trafficking guideline. See ECF No. 43, at 7-8. Though not argued, to the extent that Petitioner's claim conceivably concerns his earliest "relevant conduct" date, and consequently the calculation of his Criminal History Category, Petitioner suffered no prejudice there either. Stated simply, even if the date of Petitioner's earliest relevant conduct was changed to from 2014 to 2017, Petitioner's Criminal History Category would remain unchanged.[17] Lacking additional details from Petitioner (and any argument concerning constitutional deficiency or prejudice) this vague and undeveloped claim fails on the merits.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion is **DENIED** on the merits. ECF No. 44. Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability ("COA") is **DENIED**. 28

---

[17] If Petitioner's relevant criminal activity began in 2017, Petitioner would no longer receive 1 point for his 2006 offense, but he would still receive 3 points for his 2000 offense based on his 2010 probation violation, and 1 point for his 2014 possession offense. See ECF No. 43, at 9-10; see also U.S.S.G. § 4A1.2(e)(2). With four criminal history points, Petitioner would still have a Criminal History Category III.

U.S.C. § 2253(c); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a COA is denied by this Court, he may seek a COA from the United States Court of Appeals for the Fourth Circuit. Fed. Rule App. Proc. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a COA from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek a COA by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and counsel of record for the Government.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May **13**, 2024

22